# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| CATHY JO CASE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 4:15-CV-70-TLS |
| CAROLYN COLVIN,<br>Acting Commissioner of the Social<br>Security Administration, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The Plaintiff, Cathy Jo Case, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. She claims that she is unable to work due to a combination of physical and mental conditions.

## PROCEDURAL HISTORY

In October 2012, the Plaintiff filed a claim for disability insurance benefits, alleging disability beginning in September 2012. The agency responsible for making disability determinations on behalf of the Commissioner denied the Plaintiff's claim initially and upon reconsideration. The Plaintiff sought appeal of those determinations and filed a request for a hearing before an Administrative Law Judge (ALJ). In October 2014, the Plaintiff, who was represented by an attorney, appeared and testified at a video hearing before the ALJ. The ALJ also heard testimony from a vocational expert (VE). In November 2014, the ALJ issued a written decision in which he concluded that the Plaintiff was not disabled because she was capable of performing her past relevant work as an accounts receivable clerk and office manager. The Plaintiff sought review of the ALJ's decision by the Appeals Council. In July 2015, the Appeals

Council denied review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## THE ALJ'S FINDINGS

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also* 42 U.S.C. § 423(d)(1)(A) (defining a disability under the Social Security Act as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); *id.* § 423(d)(2)(A) (requiring an applicant to show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments.

An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined, without specifying upon which evidence he relied, that the Plaintiff's severe impairments were degenerative disc disease of the cervical, thoracic, and lumbar spine, and status post fusion surgeries. But the ALJ concluded that the Plaintiff's obstructive sleep apnea and migraines were not severe impairments because they only minimally affected her ability to perform basic work-related activities. The ALJ noted that the record was absent of any evidence that the obstructive

sleep apnea, for which the Plaintiff was prescribed a CPAP machine, caused any significant functional limitations. As to the migraines, the Plaintiff stated that she had headaches 3-5 times a month in a Headache Questionnaire dated March 18, 2013. (R. 199–211.) However, the ALJ noted that each of the Plaintiff's neurological examinations for headaches was normal (R. 699–728), and that the Plaintiff's doctor indicated in March 2013 that the Plaintiff's migraines only occurred 1-2 times per month (R. 206–11), which did not support a finding that they were severe. The ALJ also considered the Plaintiff's mental impairment of affective disorder, but found that it too was non-severe. Specifically, the ALJ relied on a Report of Contact completed by the state agency from November 27, 2012, in which the Plaintiff stated that "she is not depressed, but just down because of her physical condition." (R. 196.) Out of the four broad functional areas that the regulations set out for evaluating mental disorders, the Plaintiff experienced only mild limitations in one category: maintaining concentration, persistence, or pace.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's degenerative disc disease and other back conditions did not meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to lift or carry ten pounds occasionally and five pounds frequently, could stand or walk for two hours in an eight-hour day, and sit for six hours in an eight-hour day. The Plaintiff could never climb ladders, kneel, crouch,

or crawl, and only occasionally climb stairs, stoop, reach overhead bilaterally, and balance. In making these findings, the ALJ considered the Plaintiff's testimony regarding her symptoms related to fibromyalgia, degenerative disc disease, scoliosis, and chronic migraines, but did not find entirely credible her statements concerning the intensity, persistence, and limiting effects of those symptoms. The ALJ noted that during the Plaintiff's consultative exam, she was able to get on and off the exam table with no trouble, she could walk on her heels and toes with minimal difficulty, and she needed no assistive devices. She also had normal range of motion, other than a slight limitation of cervical rotation. The ALJ acknowledged the Plaintiff's testimony that her back pain radiated to her lower extremities, but did not consider her alleged fibromyalgia. The ALJ gave great weight to the state agency medical consultants, Dr. Dobson and Dr. Montoya, who stated that the Plaintiff could work at a light exertional level through April 2013 and at the sedentary level after April 2013. Little weight was assigned to the letter from Dr. Watson, the Plaintiff's doctor, dated November 14, 2012, because it was not consistent with the medical evidence of record and merely offered a conclusory opinion. The ALJ also assigned very little weight to the Third Party Function Report authored by the Plaintiff's husband both because he lacked medical training, calling into question the accuracy of his statements, and because he was not a disinterested third party.

    At the final step of the evaluation, the ALJ determined that the Plaintiff could perform past relevant work as an Accounts Receivable Clerk and Office Manager. These jobs were typically skilled and performed at the sedentary level.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand

is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to find that her migraine headaches were severe or that her fibromyalgia was a medically determinable impairment. For example, the ALJ failed to consider the family leave certification for her husband, authored by Dr. Horton, which was issued because the Plaintiff's migraines were so severe. Even assuming the ALJ's findings were correct, the ALJ failed to include a discussion in the RFC of either fibromyalgia's functional limitations or the effects from migraine headaches, both severe and nonsevere. Finally, the Plaintiff argues that the ALJ did not appropriately weight the Plaintiff's treating physician's testimony, her work history, or her efforts to obtain pain relief. The Defendant responds that the ALJ's determinations were supported by substantial evidence, which included the fact that Dr. Kaluta listed fibromyalgia as an "impression," not a diagnosis, and Dr. Horton noted that the Plaintiff's migraines were "occasional." (Resp. 7, ECF No. 28.) Additionally, the Defendant argues that the ALJ's credibility determinations were reasoned and appropriate.

Upon reviewing the record, the Court is not confident that the ALJ considered all the evidence and gave appropriate consideration to the combined effects of the Plaintiff's impairments.

> The ALJ must determine an individual's RFC, or what an individual can still do despite his or her limitations, based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling. However, a determination need not contain a complete written evaluation of every piece of evidence.

*Murphy v. Colvin*, 759 F.3d 811, 817–18 (7th Cir. 2014) (quotation marks, brackets, and citations omitted). The combination of a claimant's impairments "might well be totally disabling" even if each of the claimant's impairments standing alone is not serious. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

The ALJ's determination that the Plaintiff's migraines were nonsevere was not supported by substantial evidence. The Plaintiff's migraines were the subject of testimony at the hearing, where she identified that she had "migraine headaches, on average, three to five times a month" that would generally last one day, although she did have one migraine that lasted "up to three days." (R. 36–37.)[1] When the ALJ gave a hypothetical to the VE that included migraine limitations (missing three days a month) coupled with other limitations (lifting ten pounds occasionally and five frequently, standing two hours and sitting six hours in an eight-hour workday), the VE stated, "No work would be possible." (R. 49–50.) The ALJ appears to have found the migraines nonsevere because the Plaintiff's testimony regarding the frequency of her migraines was inconsistent with Dr. Horton's report that her headaches were one to two migraines per month, lasting for one day each. Why he decided this is not clear in the opinion. Dr. Horton also stated that the Plaintiff's migraines were incapacitating enough that her husband would take off work to care for her at home. (R. 208.) The ALJ failed to discuss this while still focusing on other portions of Dr. Horton's report. An ALJ is obliged to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Additionally, the ALJ did not provide enough analysis to permit meaningful judicial review as to whether the Plaintiff's fibromyalgia was a medically determinable impairment.

---

[1] The Plaintiff stated that when both her "neck and back [are] bothering her" she would need assistance from her husband to "get a canned good down . . . on a higher shelf." (R. 37.)

7

*Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Although the ALJ stated that "there is no evidence in the record of a valid diagnosis by an acceptable medical source" (R. 19), Dr. Kaluta, a treating rheumatologist, stated that the Plaintiff's muscle pains were "suggestive of coexisting fibromyalgia syndrome" on May 29, 2013. (R. 735.)[2] For fibromyalgia to be considered an impairment, a doctor's diagnosis must meet "either of two sets of diagnostic criteria promulgated by the American College of Rheumatology, in 1990 and 2000." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (citing SSR 12-2p, 2012 WL 3104869, at *2–3). Even though "the medical evidence includes many reports of symptoms, signs, and contemporaneous conditions associated with fibromyalgia," *id.*, the ALJ's opinion does not explain how Dr. Kaluta's report failed to meet either the 1990 or 2010 American College of Rheumatology criteria.

Even assuming the ALJ's impairment findings were correct, the ALJ's RFC determination was not based upon "all of the relevant evidence in the record, even limitations that are not severe." *Murphy*, 759 F.3d at 817. Although the ALJ

> was not required to mention every piece of evidence . . . providing 'an accurate and logical bridge' required him to confront the evidence in [the Plaintiff's] favor and explain why it was rejected before concluding that her impairments did not impose more than a minimal limitation on her ability to perform basic work tasks

*Thomas*, 826 F.3d at 961 (quoting *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)). Here, the ALJ's RFC determination did not even mention, let alone address, the medical evidence from Dr. Kaluta and Dr. Horton that supported the Plaintiff's claims that she suffered from migraines and fibromyalgia. The fact that the ALJ cited to some medical evidence in support of his ultimate RFC determination, such as the Plaintiff's cervical CT scan in November 2013 and pain

---

[2] The Government's only response to the Plaintiff's argument here appears to be that "Dr. Kaluta did not 'diagnose' fibromyalgia" because it was "included in his 'impression' (diagnosis) list." (Resp. 7.) But the Government cites no precedent in support of its narrow definition for the term "diagnosis."

8

management records throughout 2013 and 2014, does not excuse him from considering the totality of the medical evidence that the Plaintiff offered.

Also, the ALJ's credibility determinations were not adequate. While the Court is mindful that an ALJ's credibility determinations are entitled to special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), the ALJ is still required to "build an accurate and logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements"). Moreover, unsupported judgments regarding a plaintiff's ability to perform the activities of daily living "are not the sort of credibility determinations entitled to deference." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

In finding that the Plaintiff was not credible, the ALJ relied on her medical records, the Plaintiff's information about her jobs, and the fact that she did "not use any assistive devices for ambulation, such as a cane, walker, or brace." (R. 20.) Specifically, the ALJ wrote that

> Although the inconsistent information provided by the [Plaintiff] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the [Plaintiff] generally may not be entirely reliable. Furthermore, the evidence that her last job ended for reasons unrelated to her alleged impairments suggests that her current unemployment is unrelated to her impairments as well most of the evidence in favor of the Plaintiff on the basis that it was not credible.

(*Id.*) This is problematic for two reasons. First, the ALJ's questioning of the Plaintiff's credibility because she did not use an ambulation device—without considering that her impairments might still be as severe as alleged even if she did not need such a device—is the type of unsupported judgment not entitled to deference. Second, it does not follow that the Plaintiff's current unemployment is unrelated to physical disabilities because she was terminated from her job for

9

reasons unrelated to physical disabilities. The Plaintiff might have been terminated for non-disability reasons but now be unable to find work because her disabilities grew more severe only after her termination, or vice versa. The ALJ's failure to explore the Plaintiff's reasons here constituted another error.

The credibility determination as to the Plaintiff's husband was similarly flawed. The ALJ found that his Third Party Function Report was not credible because he was not "medically trained" and "by virtue of [his] relationship as a spouse." However, the Plaintiff's husband lived with the Plaintiff and was available to assist her, including receiving a note from Dr. Horton to miss work once or twice a month when her migraines flared up. The ALJ does not specify what observations within his Third Party Function Report made the Plaintiff's husband's statements not credible. Although it would be possible for the Court to speculate, the ALJ's decision does not provide a logical bridge that this Court can follow.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and REMANDED for rehearing.

SO ORDERED on January 24, 2017.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION